**In re ERICKSON PARTNERSHIP, Debtor.**

**In re Marvin Luther SWENSON and Charlotte Maryann Swenson, d/b/a Farmers, Debtors.**

**Bankruptcy Nos. 486–00333, 486–00670.**

United States Bankruptcy Court, D. South Dakota.

Jan. 8, 1987.

Jonathan K. Van Patten, Vermillion, S.D., for Erickson Partnership.

J. Bruce Blake and Thomas A. Blake, Sioux Falls, S.D., for Swensons.

Robert J. Haar, Asst. U.S. Atty., Sioux Falls, S.D., for U.S., FmHA and ASCS.

Andrew J. Schmid, Office of U.S. Trustee, Minneapolis, Minn., Trustee.

Randall B. Blake for Quaintance & Johnson, Sioux Falls, S.D., for FLBO.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### INTRODUCTION

This matter is before the Court on two motions filed in different cases requesting a conversion to a case under Chapter 12. Chapter 12 is included as part of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 ("Family Farmer Bankruptcy Act") which became effective November 26, 1986. One

motion, filed on behalf of Erickson Partnership by Attorney Jonathan K. Van Patten on December 3, 1986, moves, alternatively, for an order pursuant to 11 U.S.C. § 1112(d) allowing conversion of its pending Chapter 11 case to a case under Chapter 12 of the Bankruptcy Code or for a dismissal of its case pursuant to 11 U.S.C. § 1112(b) of the Bankruptcy Code. The other motion was filed on behalf of Marvin and Charlotte Swenson ("Swensons") by Attorney J. Bruce Blake on December 2, 1986, pursuant to 11 U.S.C. § 1307(d), moving for an order allowing conversion of their pending Chapter 13 case to a case under Chapter 12 of the Bankruptcy Code. With respect to the conversion issue, the Farmers Home Administration (FmHA), Federal Land Bank of Omaha (FLBO), and the United States Trustee object on two grounds: 1) Bankruptcy Court does not have subject matter jurisdiction for determining whether any cases under Chapter 11 or 13 commenced prior to the effective date of the Family Farmer Bankruptcy Act may be voluntarily converted by a debtor to a case under Chapter 12; and 2) Section 302(c)(1) of the Family Farmer Bankruptcy Act precludes a family farmer debtor from voluntarily converting to a Chapter 12 case when the debtor's Chapter 11 or 13 is commenced prior to the effective date of the Act. With respect to the dismissal issue, the FmHA and the United States Trustee object on the ground that a dismissal improperly allows a debtor to circumvent the intended effect of Section 302(c)(1), thereby violating the holding of *Central Trust Co. v. Official Creditors' Committee*, 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982). Because both motions raise substantively similar issues, the Court simultaneously heard these motions on December 22, 1986, at Sioux Falls, South Dakota.

## BACKGROUND

While the facts are not in dispute and the issues essentially raise questions of law, the Court believes it necessary to briefly state the history of each case. In other words, none of the objectors questioned either Erickson Partnership's or the Swensons' ability to otherwise file under Chapter 12.[1]

Erickson Partnership filed for relief under Chapter 11 of the Bankruptcy Code on May 29, 1986. Formed in 1978, the partnership operates a farming and hog-raising business in Elk Point, South Dakota. Ronald Erickson and his son, Richard, are its two partners, and the latter is the managing partner. While Richard's wife, Lonna, assists in the business, she also cleans houses to provide extra income. According to its schedules, the partnership owns livestock valued at $24,800, farm machinery and equipment valued at $12,170, and inventory valued at $4,400. Partnership liabilities total $122,869.13. The partnership has continued its operation under an approved use of cash collateral agreement

---

1. To properly file under this chapter, an "individual or individual and spouse" must meet (or not exceed) the following three criteria on the filing date:

1) Aggregate non-contingent and liquidated debts must not exceed $1,500,000;

2) Excluding a debt for principal residence (unless arises from farming operation), not less than 80% of the aggregate debt must arise from the farming operation; and

3) The farming operation must constitute *more than* 50% of the individual's or individual's and spouse's *gross* income of the preceding tax year.

To properly file under this chapter, a "corporation or partnership" must meet (or not exceed) the following criteria on the filing date:

1) A family or a family and its relatives must own *more than* 50% of the outstanding stock or equity;

2) The family members (and relatives) must "conduct the farming operation";

3) *More than* 80% of the *value* of either the corporation or partnership assets must consist of assets "related" to the farming operation;

4) Aggregate non-contingent and liquidated debts must not exceed $1,500,000;

5) Excluding a debt for one dwelling which is owned by the corporation or partnership that a shareholder or partner maintains as a principal residence (unless debt arises from farming operation), *not less* than 80% of the aggregate debt arises from the farming operation; and

6) If the corporation issues stock, the stock must not be publicly traded.

11 U.S.C. § 101(17). *See also* 11 U.S.C. §§ 101(18) and 109(f).

with the FmHA and, without objection, was granted an extension until November 25, 1986, to exclusively file a Chapter 11 reorganization plan. Thus, at the time of the hearing, no plan had been filed and, therefore, no disclosure statement or confirmation hearing set—or a discharge otherwise granted when, and if, a Chapter 11 reorganization plan is confirmed according to the Bankruptcy Code. *See* 11 U.S.C. § 1141.

Marvin and Charlotte Swenson filed for relief under Chapter 13 of the Bankruptcy Code on November 7, 1986. They are presently farming approximately 250 acres in Sherman, South Dakota, and have been farming since 1955. While Charlotte assists in the business, she also works part-time at a local nursing home. According to their schedules, they own certain real and personal property valued at $172,650, and their liabilities total $330,500. At the time of this hearing, no plan had been filed and, therefore, no confirmation hearing set—or a discharge otherwise granted when, and if, a Chapter 13 reorganization plan is confirmed according to the Bankruptcy Code. *See* 11 U.S.C. § 1328.

## ISSUES

The principal issues raised are:

1) Whether a Bankruptcy Court has subject matter jurisdiction to consider any Chapter 11 or 13 family farmer debtor's motion for conversion to a Chapter 12 if the debtor's case was commenced prior to the effective date of the Family Farmer Bankruptcy Act;

2) If so, whether Section 302(c)(1) of the Family Farmer Bankruptcy Act precludes a family farmer debtor from voluntarily converting to a Chapter 12 case when the debtor's Chapter 11 or 13 case is commenced prior to the effective date of the Act; and

3) If so, whether a dismissal pursuant to either Section 1112(b) or 1307(b) for the purpose of filing a Chapter 12 improperly allows a family farmer debtor to circumvent the intended effect of Section 302(c)(1) of the Family Farmer Bankruptcy Act, thereby violating the holding of *Central Trust Co. v. Official Creditors' Committee,*

454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982).

## LAW

### A. *First Issue*

■ As to the first issue, the Court holds that it has subject matter jurisdiction to consider any Chapter 11 or 13 family farmer debtor's motion for conversion to a Chapter 12 case irrespective of whether the debtor's case was commenced prior to the effective date of the Family Farmer Bankruptcy Act which provides for Chapter 12 relief. This is based on the following discussion.

Offering no authority or argument, the FmHA simply alleges that the Court does not have subject matter jurisdiction to consider any Chapter 11 or 13 debtor's motion for conversion to a Chapter 12 case if the case was commenced prior to the effective date of the Act. Ironically, as support for another of its arguments, that the language in the Act itself precludes conversions of pending Chapter 11 or 13 cases, the FmHA cites to an order issued by Bankruptcy Judge Kressel, District of Minnesota. *In re Waetjen,* BKY 4–86–3335 (Bkrtcy.D.Minn. Nov. 26, 1986). Motions to convert a case from one chapter to a case under another chapter are clearly "core" proceedings under 28 U.S.C. § 157(b)(1), (2).

### B. *Second Issue*

As to the second issue, the Court holds that the language of Section 302(c)(1) of the Family Farmer Bankruptcy Act does not preclude a family farmer debtor from voluntarily converting to a Chapter 12 case when the debtor's Chapter 11 or 13 case is commenced prior to the effective date of the Act; and, further, because the Court finds that it is "equitable" to allow both the Erickson Partnership and Swenson motions to convert to a Chapter 12, it holds that both motions requesting conversion are granted. This is based on the following discussion.

The objecting parties urge against allowing conversions to a Chapter 12 on the ground that amended Bankruptcy Code

Sections 1112(d) and 1307(d) do not apply to any cases which are commenced prior to November 26, 1986.[2] Section 302(c)(1) of the Act provides:

"The amendments made by subtitle B of title 11 shall not apply with respect to cases commenced under title 11 of the United States Code before the effective date of this Act."

Included among the amendments made by Subtitle B is the amendment of Sections 1112(d) and 1307(d), both of which otherwise provide for conversions to a Chapter 12. Thus, their argument is simply that this section precludes any debtor's voluntarily converting a Chapter 11 or 13 case to a case under Chapter 12 if it was commenced prior to the "effective date of this Act." As support for their position, they cite to an order issued by Judge Kressel in *In re Waetjen*, BKY 4-86-3335 (Bkrtcy.D.

Minn. Nov. 26, 1986). Denying a debtor's motion for extension of time to file schedules, Judge Kressel, among other things, held that Section 302(c)(1) of the Act precludes conversion of any Chapter 11 case to a case under Chapter 12 if it was commenced prior to November 26, 1986 (which is the effective date of the Act).

For the Court to agree with the objecting parties' argument, it would necessarily have to accept the premise that Congress intended to create two groups of financially distressed family farmers. These groups would operate under different standards— one for farmers who filed for reorganization bankruptcy prior to November 26, 1986, and one for those who filed on or after that date.[3] A review of the Act's legislative history, however, clearly requires a different conclusion.

2. Congress amended Section 1112(d) as follows:
The court may convert a case under this chapter to a case under chapter *12 or* 13 of this title only if—
(1) the debtor requests such conversion;
(2) the debtor has not been discharged under section 1141(d) of this title;
(3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable. (amendments are underlined)
To understand how Chapter 13 conversions apply to family farmers, Section 1307(d) must be read together with subsection (e).
Congress amended Section 1307(d) as follows:
Except as provided in subsection (e) of this section, at any time before the confirmation of a plan under section 1325 of this title, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under chapter 11 or 12 of this title. (amendments are underlined)
Congress amended Section 1307(e) as follows:
"The court may not convert a case under this chapter to a case under chapter 7, 11 or 12 of this title if the debtor is a farmer, unless the debtor requests such conversion." (amendments are underlined)

3. Chapter 12 offers an economically distressed family farmer a new, substantially simplified, and less expensive method to reorganize his debts and continue farming.
Unlike in a Chapter 11, a family farmer seeking to successfully reorganize in a Chapter 12, among other things, does not have to overcome any plan feasibility problems raised by a credi-

tor's election to be paid back the full amount of his claim as allowed under Section 1111(b)(2); *see also*, 11 U.S.C. §§ 1129(a)(7), 1225(a)(4), (5); make any payments with respect to any creditor's lost opportunity costs requests under Sections 361 and 362 (a/k/a the *American Mariner* Rule), as interpreted in *In re Briggs Transportation Co.*, 780 F.2d 1339 (8th Cir.1985) (Bankruptcy Courts may allow recovery of lost opportunity costs in Chapter 11's); *see also*, 11 U.S.C. § 1205 and H.R. 8999 (Oct. 2, 1986); or address the absolute priority rule issue under Section 1129(b)(2)(B)(ii); *see, In re Ahlers*, 794 F.2d 388 (8th Cir.1986); or formulate any disclosure statement under Section 1125 and hold hearings thereon. A farmer attempting to reorganize in a Chapter 11 often incurs substantial attorneys fees and expenses because of the complexity of the process. Chapter 12, however, is substantially similar to a Chapter 13 and should allow a farmer to attempt reorganization at a cost which is substantially less than if otherwise in a Chapter 11.
Unlike a Chapter 13, a family farmer seeking to reorganize under a Chapter 12, among other things, does not have to meet $450,000 debt limitation to properly file, as required under 11 U.S.C. § 109(e); *see* 11 U.S.C. § 101(17) and n. 1; a family farmer partnership or corporation may properly file under Chapter 12; and a family farmer may properly modify his/her principal residence mortgage in a Chapter 12. *See* 11 U.S.C. §§ 1325(b)(2), 1222(a), (b), and 1225(a)(4), (5).
For a discussion of the problems with respect to a debtor's voluntarily dismissing his Chapter 11 or 13 case and attempting to refile under Chapter 12, see n. 4.

Consider the following statements made just before passage of the Act. Senator Thurmond discussed the necessity of dealing with a crisis which has reached "serious proportions":

> "This legislation creates new and expanded protections for a majority of American farmers in the bankruptcy courts."

Cong.Rec. S15075 (daily ed. Oct. 3, 1986). Senator Thurmond's remarks suggest immediate relief for those affected by the crisis. There is no mention of any withholding of relief so that the new and expanded protections alluded to would be available only to those farmers who, in the future, experienced financial difficulties.

There was evidence presented to Congress that the *existing* bankruptcy provisions were not working for farmers already in bankruptcy. As Senator Grassley stated:

> I harbor no illusions about the ability of the Federal Bankruptcy Code to redress farmers' grievances. I know as well as anyone that the economic causes of the crisis in agriculture lie well beyond the realm of bankruptcy.
>
> But hearings in the House and Senate led to the unmistakable conclusion that the Bankruptcy Code doesn't work for farmers.
>
> ....
>
> The final product reconciles the unique attributes of farming into an existing bankruptcy framework, currently used by other small business and sole proprietors.

Cong.Rec. S15076 (daily ed. Oct. 3, 1986). There was a similar concern in the House of Representatives for the adverse consequences of the agricultural crisis and a corresponding sense that the existing provisions of the Bankruptcy Code were ill-suited for the reorganization of farmers. Representative Fish described the new Act:

> The product of the conference committee is consistent with the objective of helping family farmers to keep their farms and satisfy creditors out of future earnings. A new chapter 12 for family farmers, patterned in a number of respects after existing chapter 13, is tailored specifically to the realities of a nation-wide farm crisis.

Cong.Rec. H9001 (daily ed. Oct. 2, 1986). Representative Synar spoke eloquently of the need to provide immediate relief for family farmers:

> I doubt there will be anything that we do that will have such an *immediate impact* in the grassroots of our country with respect to the situation that exists in most of the heartland, and that is in the agricultural sector. . . .
>
> Second, and more importantly, those family farmers who are facing that brink of disaster where they would have to be thrown off their farms can now look to this Congress and to this Government for new hope. That new hope is that *we are going to give them the same standard that a small businessman or an individual has at this present time, which is the ability to reorganize.*
>
> ....
>
> This legislation will give us, hopefully, the new bankruptcy judges that will offer the sympathy and the compassion to deal with this serious problem.
>
> I join with my colleagues and, hopefully, this is the ray of hope that our family farmers have needed.

Cong.Rec. H9001 (daily ed. Oct. 2, 1986) (emphasis added).

The Joint Explanatory Statement of the Committee of Conference supports the conclusion that Congress did not intend to create two groups of family farmers. The statement concerning conversion is as follows:

*Applicability of Chapter 12 to Pending Chapter 11 and 13 Cases*

> It is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of the enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.
>
> Chief among the factors the court should consider is whether there is a

substantial likelihood of successful reorganization under Chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

Cong.Rec. H8999 (daily ed. Oct. 2, 1986). It should be noted that Senators Thurmond and Grassley, as well as Representatives Fish and Synar, served on the Conference Committee which issued the foregoing statement. Cong.Rec. H8999 (daily ed. Oct. 2, 1986).

What then did Congress intend by the language of Section 302(c)(1) of the Family Farmer Bankruptcy Act? In light of the remarks made by the Conference Committee members, it is possible that they intended the Chapter 12 provisions not to apply to pending cases which had not otherwise converted to Chapter 12 in accordance with the provisions of 11 U.S.C. §§ 1112(d) and 1307(d). Request for conversion should be measured under the "equitable" standard of 11 U.S.C. § 1112(d).

Another possibility which is more probable is that, in the final process of legisla-

tion, Congress inadvertently placed Sections 1112(d) and 1307(d) amendments within Subtitle B. The misplacement in Subtitle B was important because it brought the amendment of these sections within the restrictive language of Section 302(c)(1) regarding the effective date and, thus, in apparent conflict with Congressional leaders' remarks and the Joint Explanatory Statement. Judge Kressel, in his order issued in *In re Waetjen*, BKY 4–86–3335 (Bkrtcy.D.Minn. Nov. 26, 1986), alluded to the "hectic and even chaotic conditions of the last days of the 99th Congress." Judge Kressel concluded that the statute reflected the true intent of Congress and that the Joint Explanatory Statement could be disregarded. However, in light of the remarks made before the passage of the Act, it is more likely that the Joint Explanatory Statement is reflective of Congress's true intent.

Unlike a dismissal,[4] a conversion does not affect time period considerations for preference (11 U.S.C. § 547) or fraudulent conveyance (11 U.S.C. § 548) actions. In other words, as the case may be, the ninety-day or one-year time period is fixed on the date the bankruptcy petition was originally filed, and not the date of refiling under a Chapter 12 as otherwise would be the result in a dismissal. Thus, allowing a conversion fully protects a trustee's or creditor's fraudulent conveyance or preference rights in that it preserves these important time frames.

[4] The Court notes that whether a debtor may properly dismiss his case for purposes of filing a Chapter 12 is in dispute. The specific issue raised is whether a dismissal pursuant to either Section 1112(b) or Section 1307(b) for the purpose of filing a Chapter 12 improperly allows a debtor to circumvent the intended effect of Section 302(c)(1) of the Family Farmer Bankruptcy Act, thereby violating the holding of *Central Trust Co. v. Official Creditors' Committee*, 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982). The crux of this theory is that the Court, under its Section 105 powers, may dismiss the case for "cause," that of for the purposes of filing a Chapter 12. This would negate the adverse effect of 11 U.S.C. § 109(g). This section precludes refiling for a 180-day period if "the debt- or requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."

In *Central Trust*, the debtor moved to dismiss its Chapter XI petition (filed under the 1898 Bankruptcy Act) in order to refile under Chapter 11 of the Bankruptcy Reform Act of 1978. The Supreme Court denied the motion, relying upon the unequivocal language of the statute and accompanying legislative history. While not deciding this issue, the Court only notes that Chapter 12's legislative history certainly does not support the position that Congress only intended that Chapter 12 be available to those family farmers who fortunately did not file until after November 26, 1986.

In allowing a result different from what Section 302(c)(1) seemingly suggests, the Court is not required to find an ambiguity in the language of the statute. As the Supreme Court stated in *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940):

> When [the plain meaning] has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results *but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole"* this Court has followed that purpose, rather than the literal words. (emphasis added)

*Accord, Hodgson v. Bd. of County Com'rs, County of Hennepin,* 614 F.2d 601, 612 (8th Cir.1980); *Pressley v. Capital Credit & Collections Service,* 760 F.2d 922, 924 (9th Cir.1985); *Church of Scientology v. United States Department of Justice,* 612 F.2d 417, 422 (9th Cir.1979); *see also, Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 1898, 44 L.Ed.2d 525 (1975) (In interpreting statutes, the court's objective is to "ascertain the congressional intent and to give effect to the legislative will."). *Accord, In re Cecchini,* 780 F.2d 1440, 1442 (9th Cir.1986); *Pressley v. Capital Credit & Collections Service,* 760 F.2d 922, 924 (9th Cir.1985).

To follow the interpretation urged by the objecting parties would produce a result which is unreasonable in light of the stated purpose of Congress to provide a substantially more feasible method of reorganization for family farmers. The apparent misplacement of the amendments to Section 1112(d) and Section 1307(d) defeats the obvious intent of Congress and produces an absurd result in creating two classes of family farmers in distress; one class in economic and Bankruptcy Code distress, and the second, merely in economic distress.

■ Congress recognized that the provisions of the existing Bankruptcy Code were not working well, if at all, for the farmers who are attempting to reorganize. It clearly violates the purpose of Congress to provide relief to family farmers by dividing them into two groups, thereby creating a double standard for reorganization purposes. Permitting conversions to Chapter 12 also fully protects creditors' preference and fraudulent conveyance rights. Consistent with the policies underlying the Bankruptcy Code, conversions in this manner balance properly both a family farmer debtor's and his various creditors' rights. Based on this, the Court holds Section 302(c)(1) of the Family Farmer Bankruptcy Act does not preclude a family farmer debtor from voluntarily converting to a Chapter 12 case when the debtor's Chapter 11 or 13 case is commenced prior to the effective date of the Act. Consistent with the amended Code and Joint Explanatory Statement, the Court must, however, find that a family farmer's request to convert is "equitable" under the circumstances.

■ In the instant case, it is undisputed that both Erickson Partnership and the Swensons qualify for Chapter 12 relief. Also, no plans have been filed and, therefore, no disclosure statement or confirmation hearings have been set—or a discharge otherwise granted when, and if, either a Chapter 11 or 13 plan is confirmed according to the Bankruptcy Code. The Court also notes that the objectors have not raised an issue as to the debtors' ability to successfully reorganize under Chapter 12. Moreover, these are not cases where parties have substantially relied on current law. The Court, therefore, finds that it is "equitable" to grant both Erickson Partnership's and the Swensons' motions to convert from a case under their respective chapters to a case under Chapter 12.[5]

---

**5.** Attorney Blake also argued that the plain meaning of Section 302(c)(1) does not mean that the "Subtitle B" amendments do not apply to cases commenced prior to the effective date of the Family Farmer Bankruptcy Act, that of November 26, 1986, but that courts may not properly consider these provisions for pending cases until the "effective date." While the Court finds some merit in this argument, it is more persuaded by the contention that prohibiting conversion results in an absurd application of the law.

Because the Court has held that Section 302(c)(1) of the Family Farmer Bankruptcy Act does not preclude a family farmer debtor from voluntarily converting to a Chapter 12 case when the debtor's Chapter 11 or 13 case is commenced prior to the effective date of the Act, it need not decide the issue of whether a dismissal pursuant to either Section 1112(b) or Section 1307(b) for the purpose of filing a Chapter 12 improperly allows a family farmer debtor to circumvent the intended effect of Section 302(c)(1) of the Act, thereby violating the holding of *Central Trust Co. v. Official Creditors' Committee*, 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982).

Accordingly, the above and foregoing hereby constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matters pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. Counsel for Erickson Partnership and counsel for the Swensons are directed to submit an appropriate order granting their motions for conversion in their separate cases in accordance with Bankr.R.P. 9021.