**In re Henry Rightor COBB, Jr. and Jane Eidt Cobb, d/b/a Cobb Planting Company, Debtors.**

**Bankruptcy No. 86–00886–BRC–DEE.**

United States Bankruptcy Court, N.D. Mississippi.

July 8, 1987.

Lawrence M. Magdovitz, Clarksdale, Miss., for Henry Rightor Cobb, Jr. and Jane Eidt Cobb, d/b/a Cobb Planting Co.

David R. Hunt, Sullivan Hunt, Spell & Henson, Clarksdale, Miss., for The Prudential Ins. Co. of America.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

Came on for consideration the motion filed by the above captioned debtors to convert this Chapter 11 bankruptcy case to a case under Chapter 12 of the Bankruptcy Code; response to said motion having been filed by the Prudential Insurance Company of America, hereinafter referred to as Prudential, a secured creditor of the debtors; all parties being represented by their attorneys of record; and the Court having heard and considered same, hereby finds as follows, to-wit:

### I.

The Court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A).

### II.

This voluntary Chapter 11 case was commenced on June 19, 1986, and as such, was in existence prior to the effective date of the family farmer provisions of the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986, (Public Law No. 99–554), hereinafter referred to as the 1986 Act. The debtors moved to convert this case to a case under Chapter 12 of the Bankruptcy Code on April 3, 1987, the date of a hearing scheduled as a result of a motion seeking relief from the automatic stay filed by Prudential. Prudential has objected to the conversion alleging essentially three reasons, to-wit:

1. The debtors are prohibited from converting a Chapter 11 case, existing prior to November 26, 1986, the effective date of the 1986 Act, to a Chapter 12 case as a matter of law.

2. The debtors are ineligible for Chapter 12 relief in that they do not qualify as family farmers, and, in the alternative, under the circumstances of this case, conversion is not equitable.

3. Chapter 12 of the Bankruptcy Code is unconstitutional.

### III.

The family farmer provisions of the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986 contain a mechanism for the conversion of Chapter 11 or Chapter 13 cases to cases under Chapter 12. Since the instant case was filed and is currently being administered under Chapter 11, future reference in this Opinion will be made only to the conversion of a Chapter 11 case rather than conversion of other cases under the Bankruptcy Code. 11 U.S.C. § 1112(d) provides for conversion as follows:

(d) The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if

(1) the debtor requests such conversion;

(2) the debtor has not been discharged under section 1141(d) of this title; and

(3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable.

It was not the intent of the Senate and House Conferees, who jointly considered this legislation, that there should be rou-

tine conversion of cases *pending at the time of the enactment of the 1986 Act.* H.Conf.Rep. No. 958, 99th Cong., 2d Sess. 48, *reprinted in* U.S.Code Cong. & Ad. News 5227, 5249 (1986).

A split of judicial authority has developed as to whether cases pending on the effective date of the 1986 Act can be converted to Chapter 12. The final draft of the 1986 Act contradicts the above cited Conference Report. § 302(c)(1) of the 1986 Act provides that the family farmer provisions "shall not apply with respect to cases commenced ... before the effective date of ... [the] Act." 11 U.S.C. § 1112(d), the mechanism for conversion, says absolutely nothing about an effective date. It essentially permits conversion where conversion is equitable. On the other hand, the Conference Report states, as noted above, that conversion of *pending* cases should not be routinely permitted. The Conference Report goes further to discuss certain factors to be considered in deciding whether conversion should be allowed in *pending* cases. *See,* Conference Report at 48–49. Although this Court would concede that the language appearing in the 1986 Act is unambiguous in stating that Chapter 12 is not applicable to existing cases, the Conference Report is equally clear that it was the intent of both the Senate and House Conferees that conversion was permissible in these cases if the circumstances were justifiable. The Court hastens to note that the Conference Report is a significant part of the legislative process and, in effect, brought this legislation to final consideration. In view of the obvious underlying intent, it is perplexing that the language set forth in § 302(c)(1) appears in the final version of the 1986 legislation. The Court can but surmise that this was merely a drafting error resulting from a lack of recognition of interacting provisions in the Bankruptcy Code.

The Court is aware that on February 19, 1987, Senator Charles Grassley of Iowa introduced remedial legislation that would permit conversion to Chapter 12 of cases existing prior to November 26, 1986, generally in keeping with 11 U.S.C. § 1112(d). In his remarks on the Senate floor, Senator Grassley introduced for the record the full text of *In re Erickson Partnership,* 68 B.R. 819 (Bankr.D.S.D.1987), authored by Judge Peder Ecker, one of the first opinions permitting the conversion of cases, existing prior to the effective date of the 1986 Act, to Chapter 12. An identical bill was introduced in the House by Representative Tony Coelho of California. Although this remedial legislation has been pending for several months now, this Court does not know when or if it will be passed. As such, the bankruptcy courts across this country are merely left to "twist in the wind", speculating as to what, if anything, Congress will do.

The easy approach is to find that § 302(c)(1) is unambiguous, and therefore, since the terms of the statute are clear and explicit, apply it as written. This approach would ignore the legislative history appearing in the Conference Report which conveys a totally different intent. Not surprisingly, there is authority for the "easy way out." *See, Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *United States v. Oregon,* 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), as well as, *In re Tomlin Farms,* 68 B.R. 41 (Bankr.D.N.D.1986), and its progeny. On the other hand, there is authority that when a statute as enacted mandates an unreasonable result, then the underlying purpose of the legislation as a whole can be considered to determine whether the statute is at variance with the overall policy of the legislation. *See, United States v. American Trucking Association, Inc.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). The "easy way out" solution would allow a debtor who filed a Chapter 11 case on November 27, 1986 to later convert his case to one under Chapter 12 provided that he could meet the test of 11 U.S.C. § 1112(d). This same solution would prohibit the Chapter 11 debtor from converting his case to Chapter 12 as a matter of law and regardless of the facts of the case simply because he filed his Chapter 11 case two days earlier on November 25, 1986. This is not only absurd, it is illogical and inequitable. The line of

bankruptcy court decisions refusing to consider the intent of the 1986 legislation will not be followed in this district. Therefore, it is the opinion of this Court that conversion to Chapter 12 of those cases pending prior to November 26, 1986, shall be permitted if the facts and circumstances indicate that such conversion is equitable. Although this Court would certainly welcome a clear and decisive legislative mandate, those farmers who are eligible for conversion cannot afford the luxury of waiting on the legislative processes.

### IV.

Having decided that the debtors are not prohibited as a matter of law from converting their Chapter 11 case to Chapter 12, this Court must now address the issues of whether the debtors are, in fact, eligible for relief under Chapter 12 and whether conversion is equitable.

The eligibility requirements for a Chapter 12 family farmer are found in 11 U.S.C. § 101(17) which provides as follows:

(17) 'family farmer' means—

(A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed; or

(B) corporation or partnership in which more than 50 percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such fami-

ly, and such family or such relatives conduct the farming operation, and .

(i) more than 80 percent of the value of its assets consists of assets related to the farming operation;

(ii) its aggregate debts do not exceed $1,500,000 and not less than 80 percent of its aggregate noncontingent, liquidated debts (excluding a debt for one dwelling which is owned by such corporation or partnership and which a shareholder or partner maintains as a principal residence, unless such debt arises out of a farming operation), on the date the case is filed, arise out of the farming operation owned or operated by such corporation or such partnership; and

(iii) if such corporation issues stock, such stock is not publicly traded;

A farming operation is defined in 11 U.S.C. § 101(20) as follows:

(20) 'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state;

From the debtors' schedules that were filed in this case, as well as, from testimony adduced at several hearings, it appears that the aggregate debts of the debtors do not exceed $1,500,000.00, and at least 80% of their aggregate, non-contingent, liquidated debts as of the date of the filing of this case arise out of their *former* farming operations. Two critical problems in this case center on whether the debtors received more than 50% of their gross income from farming operations during the taxable year preceding the year in which the bankruptcy case was filed, and whether the debtors are individuals actually "engaged in a farming operation" required by 11 U.S.C. § 101(17)(A).

■ The first question that must be answered is what taxable year is applicable for the 50% income test. In this case, for reasons discussed hereinbelow, the year actually does not matter. But, in other cases, where conversion is sought the next succeeding year after filing, this factor

could be extremely significant. 11 U.S.C. § 348(a) speaks to this issue as follows:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

The case now before this Court was commenced in calendar year 1986. Conversion to Chapter 12 was not sought until April 3, 1987. As such, the interaction of 11 U.S.C. § 101(17)(A) and 11 U.S.C. § 348(a) indicates that the appropriate taxable year to be considered in the conversion of this case is 1985. The interplay between sections of the Bankruptcy Code has once again produced an illogical result. This Court is of the opinion that the most logical year to consider is the taxable year immediately previous to the year that conversion is sought. However, this opinion is unsupported by any known statutory authority.

The last year that Mr. Cobb farmed in his own name was 1985. However, his 1985 tax return does not clearly indicate that 50% of his gross income was produced from farming. A breakdown of this income, taken from Schedule F, reflects the following:

| | |
|---|---|
| Sales of Livestock, Produce, Grains, and other products | $ 537.00 |
| Machine work | 24,300.00 |
| Other income | 518.00 |
| Gross income | $25,355.00 |

The transcripts of the several hearings conducted in this case reveal that for the past several years Mr. Cobb has primarily been involved in the excavation and dirt hauling business. Coincidentally, at the conclusion of a previous hearing, conducted as a result of Prudential's first motion seeking relief from the automatic stay, this Court was required to enjoin Mr. Cobb from removing and selling topsoil from the real property which is encumbered by the Prudential deed of trust.

Apparently, Mr. Cobb's business activities in 1985 were similar to those conducted in 1986. In order to understand exactly what Mr. Cobb was doing, the Court must look to his overall business conduct for the past two years, as well as, the present year.

Concerning the 1985 machine work, Mr. Cobb testified that some of his income was derived from custom harvesting. However, the exact amount of the custom harvesting income was never specified. The Court, having seen the developing pattern of Mr. Cobb's business operations, concludes that the greatest portion of the machine work income resulted from construction work, where he leased and operated his equipment on construction projects, as well as, from his dirt excavation business.

In 1986, Mr. and Mrs. Cobb leased their farm land to their son, E.R. "Randy" Cobb, for a percentage of the crop income. To date no rent has been paid to the Cobbs as a result of this lease. Insofar as Mr. and Mrs. Cobb's other income is concerned, the following figures were extracted from deposits to their bank account between January 31, 1986, and December 31, 1986:

| EQUIPMENT RENT | | |
|---|---|---|
| C & G Construction | $24,528.24 | |
| Randy Cobb | 2,002.36 | |
| Richard Cobb | 482.00 | |
| Circle R Farms | 900.00 | $27,912.60 |
| CUSTOM WORK (all cash) | | $ 7,433.00 |
| MISCELLANEOUS | | |
| Mid South | $ 325.00 | |
| Cobb | 40.00 | |
| Stewart Mills | 400.00 | $ 765.00 |

A comparison of the income resulting from the equipment rental to the income received as a result of the custom work in 1986 confirms the Court's earlier conclusion that most of the machine work income earned during 1985 would have come from the construction work or the dirt excavation work. At any rate, since this bankruptcy case was filed, all income earned from C & G Construction Company, a business owned by the debtors' other son, Richard I. Cobb, was related to the rental of construction equipment rather than farming equipment. (See page 33, transcript of April 3, 1987 hearing.)

In 1987, the debtors again are leasing their farm land to their son, Randy, but on a cash rent basis. The debtors have released all of their farming equipment to the Farmers Home Administration in partial satisfaction of its claim. When questioned about this in open court, Mr. Cobb indicated that his son owned sufficient equipment to farm the property.

At one point during the administration of this case, Mr. Cobb and his son, Richard, had plans of operating a sanitary land fill on the farm property. At a hearing conducted as a result of a complaint filed by Prudential to enjoin the land fill operation, Mr. Cobb indicated that the land fill was to be an integral part of his plan of reorganization. Because neither Mr. Cobb nor his son had obtained the requisite permits to operate either a sanitary land fill or a rubbish dump, this Court enjoined such operations until Mr. Cobb could comply with both state and local regulations. To date, the Court has not been made aware of any permits that have been issued authorizing the Cobbs to operate either a sanitary land fill or a rubbish dump.

Following a hearing conducted as a result of objections to the debtor's disclosure statement, the Court directed the debtors to amend their disclosure statement to provide additional financial information. On February 10, 1987, the debtors did file an enlarged disclosure statement which provided the following information, to-wit:

Description of business to be reorganized:

In 1949, Henry R. Cobb and Jane E. Cobb moved to the land involved in this bankruptcy, established their home on this land, and have worked together since that time to raise a family and farm the land. Mr. Cobb has planted at various times on this land, cotton, wheat, soybeans, rice and milo. Because of the farm economy, Mr. and Mrs. Cobb has [sic] for the past two seasons, rented this land to their son, E.R. Cobb. Mr. Cobb in addition to farming his own place, has done extensive custom harvesting and other type farm work for other farmers. Mr. Cobb has also done land leveling and drainage for various farmers. Until order of this court [sic], Mr. Cobb had sold dirt from pits on the farm. Recently, Mr. Cobb has obtained permission for a small site on this farm to be used for rubbish disposal and has applied for a section of said farm to be approved as a solid waste disposal area.

The enlarged disclosure statement corroborates the income figures, set forth hereinabove, applicable to calendar year 1985, and confirms that the Cobbs have leased the farm land to their son who is not a debtor in this bankruptcy case. The 1987 income projections indicate that the debtors are not engaged in a farming operation, but are primarily lessors of farm land which is not contemplated by 11 U.S.C. § 101(20).

■ Having considered those factors discussed hereinabove, the Court reaches the conclusion that the debtors have not received 50% or more of their income from farming operations in either 1985 or 1986. Further, the debtors are no longer engaged in a farming operation. The mere leasing of farm land does not qualify an individual to be a family farmer as contemplated by the family farmer provisions of the 1986 Act. As such, the Court finds that the debtors are not eligible for Chapter 12 relief and that the conversion of the debtors' Chapter 11 case to a case under Chapter 12 is not equitable. Therefore, the debtors' motion to convert will be overruled.

V.

Since this proceeding can be resolved without the necessity of reaching the constitutional issues raised by Prudential, the Court declines to address this part of the Prudential objection.

An Order will be entered consistent with this Opinion.