CENTRAL TRUST CO., ROCHESTER, N. Y. *v.* OFFI-
CIAL CREDITORS' COMMITTEE OF GEIGER
ENTERPRISES, INC., ET AL.

No. 80–1565.   Decided January 11, 1982

PER CURIAM.

On August 15, 1979, Geiger Enterprises, Inc. (Geiger), filed a petition in the United States District Court for the Western District of New York seeking relief under Chapter XI of the Bankruptcy Act of 1898 (formerly 11 U. S. C. § 701 *et seq.*) (Bankruptcy Act). Geiger continued operating its business as a debtor-in-possession, and numerous creditors filed claims, including a claim by the United States for $2,075,674.64 in unpaid taxes. Respondent Official Creditors' Committee was established by the Bankruptcy Court to represent the interests of creditors with relatively small claims.

On October 1, 1979, the Bankruptcy Reform Act of 1978, Pub. L. 95–598, 92 Stat. 2549, 11 U. S. C. § 101 *et seq.* (1976 ed., Supp. IV) (New Code), became effective. Thereafter, several of Geiger's wholly owned subsidiaries and affiliate corporations filed petitions for relief under Chapter 11 of the New Code. On January 9, 1980, Geiger moved to dismiss its Chapter XI petition on the representation that if dismissal were granted it too would immediately file a petition under Chapter 11 of the New Code and would seek substantive consolidation of its proceedings with the proceedings of its subsidiary and affiliate corporations.

This motion was opposed by petitioner, a secured creditor, and by the United States. Both opponents argued that such dismissal was prohibited by § 403(a) of the New Code, a transitional rule enacted by Congress to govern cases pending under the Bankruptcy Act on the effective day of the New Code. Section 403(a) provides:

> "A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if [the New Code] had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or

proceeding as if the [New Code] had not been enacted." 92 Stat. 2683, note preceding 11 U. S. C. § 101 (1976 ed., Supp. IV).

The Bankruptcy Court rejected this argument and granted the motion to dismiss Geiger's Chapter XI petition, relying primarily upon Rule 11–42(a) of the Rules of Bankruptcy Procedure, which provides:

"Voluntary Dismissal or Conversion to Bankruptcy.

"The debtor may file an application or motion to dismiss the case or to convert it to bankruptcy at any time prior to confirmation or, where the court has retained jurisdiction, after confirmation.  On filing of such application or motion, the court shall . . . enter an order after hearing on notice dismissing the case or adjudicating him a bankrupt whichever may be in the best interest of the estate."

The Bankruptcy Court characterized this Rule as "unique in that the purpose of dismissal is to permit refiling under compatible substantive law provisions and [to] permit substantive consolidation," and found that consolidation of Geiger's proceedings with the proceedings of its subsidiaries and affiliates would "be in the best interest of this estate."  App. to Pet. for Cert. A–11.  Thus, on February 8, 1980, Geiger's original petition was dismissed and Geiger immediately filed a petition for relief under Chapter 11 of the New Code.

The United States District Court for the Western District of New York reversed.  It held "the plain meaning of section 403(a)" to be "that the bankruptcy court must apply the [Bankruptcy] Act to cases filed prior to October 1, 1979 and that such cases shall proceed as if the New [Code] had never been enacted."  *Id.*, at A–19.

On appeal, the District Court's decision was in turn reversed by the United States Court of Appeals for the Second Circuit.  *In re Geiger Enterprises, Inc.*, 635 F. 2d 106 (1980). The Court of Appeals held "that Rule 11–42(a) must be read

in conjunction with section 403(a)" to permit dismissal and re-filing in certain cases, and that "[t]he operative test is whether the estate's best interest will be served by" such procedure. *Id.*, at 109. The Court of Appeals qualified this test by holding that dismissal and refiling would be improper if they prejudiced the claims of the creditors, and remanded the case so that the Bankruptcy Court and District Court could consider the existence of actual prejudice.

Petitioner has sought review in this Court, arguing that the decision of the Court of Appeals "conflicts with the plain meaning of § 403(a) as well as its legislative history," and "provides a procedural device by which the clear Congressional intent is easily negated." Pet. for Cert. 9. We agree.

The language of § 403(a) is unequivocal. It provides that cases filed under the Bankruptcy Act "*shall* be conducted and determined under such Act as if [the New Code] had not been enacted." It makes *no* exception for petitions to be refiled under the New Code; indeed, it expressly provides that petitions such as Geiger's "*shall* continue to be governed" by the Bankruptcy Act. Any exception to this mandate recognized by the Court of Appeals is of wholly judicial creation, supported by neither the language of the New Code nor its legislative history.[1]

---

[1] The legislative history of the New Code supports the unequivocal language of § 403(a). The House Report on the New Code explained:

"The first phase of transition begins on October 1, [1979], the primary effective date of the bill. On that date, the new substantive law of bankruptcy as proposed by the bill will be put into effect. It will apply to all cases commenced on or after October 1, [1979]. The application of the new law will only be to new cases, however. Cases commenced before October 1, [1979], will continue to be governed by the Bankruptcy Act, as in effect September 30, [1979], and by all other applicable laws in effect on that date. Those cases will proceed as though this bill had not been enacted." H. R. Rep. No. 95–595, pp. 287–288 (1977) (footnotes omitted).

The same Report also states:

"[Section 403(a)] continues cases pending as of the effective date of the bill

Nor does Rule 11–42(a) provide authority for the procedure. The language of the Rule clearly contemplates a voluntary dismissal which results in an adjudication of the debtor's bankruptcy or one which revests title of all property in the debtor and removes from it the protection of the bankruptcy laws. It does *not* contemplate a dismissal, such as the one in this case, which neither declares the debtor bankrupt nor restores the creditors' rights against the debtor's property, but simply holds matters in abeyance while the debtor files its petition under a new law.[2] Even if it were

---

without change. The new law will not affect cases commenced under the old law. Those cases will proceed as though this Act did not take effect. The section applies to substantive as well as procedural matters." *Id.*, at 459.

[2] Rule 11–42(a) provides that upon voluntary dismissal, the Bankruptcy Court will either "enter an order adjudicating the debtor a bankrupt," or will "enter an order . . . dismissing the case." If the latter order is entered, subdivision (d) of the Rule provides that "[a] certified copy of the order of dismissal under this rule shall constitute conclusive evidence of the revesting of the debtor's title to his property." Thus, if voluntary dismissal does not result in an adjudication of bankruptcy, it revests title to all property in the debtor and removes from it the protection of the bankruptcy petition. As one commentator has stated:

"It should be apparent that, upon dismissal, the debtor is placed exactly where he was before the Chapter XI case was filed and it is therefore unnecessary in the statute to provide for something so plain. When an order of confirmation in a Chapter XI [proceeding] is entered it has legal consequence and among the legal consequences is the revestment of title to property in the debtor, and of the divestment by the court of its jurisdiction over the debtor and its property wherever located. . . . Rule 11–42(d) merely makes plain not only that the debtor is revested with title to its property but, also, that a certified copy of the order of dismissal shall constitute conclusive evidence of that revestment. This, in effect, preserves to the creditors who have been informed of the dismissal under Rule 11–42(c), their remedies against the debtor's property." 14 W. Collier, Bankruptcy ¶ 11–42.07 (14th ed. 1976).

As is evident from this discussion, the dissent misperceives the purpose of Rule 11–42 when it argues that the Rule provides the mechanism by which the procedural and substantive commands of § 403(a) were satisfied

possible to so interpret Rule 11–42(a), the Rule would not modify the clear command of § 403(a). The Rules of Bankruptcy Procedure are applicable under the New Code *only* "to the extent not inconsistent with the amendments made by [the New Code]."[3] Transitional Rules § 405(d), 92 Stat. 2685. As interpreted by the Court of Appeals, Rule 11–42(a) clearly conflicts with § 403(a).

Thus, the Court of Appeals erred when it "amended" § 403(a) to permit refiling under the New Code if such refiling would not actually prejudice the creditors. That the Court of Appeals thought consolidation of Geiger's petition with those of its subsidiaries and affiliates would serve the best interests of the estate, or would conserve judicial resources, does not justify its disregard of a clear congressional directive. "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law-making body which passed it,

---

in this case. The Rule authorizes only one kind of dismissal, one that results in a full discharge from bankruptcy. Geiger was not discharged from bankruptcy by the dismissal below. Rather, the dismissal was entered solely to permit Geiger to file under the New Code, that is, to permit it to avoid the prohibition of § 403(a).

[3] Section 405(d) of the Transitional Rules of the New Code provides:

"The [R]ules [of Bankruptcy Procedure] prescribed under section 2075 of title 28 of the United States Code and in effect on September 30, 1979, shall apply to cases under title 11, to the extent not inconsistent with the amendments made by this Act, or with this Act, until such rules are repealed or superseded by rules prescribed and effective under such section, as amended by section 248 of this Act." 92 Stat. 2685, note preceding 28 U. S. C. § 1471 (1976 ed., Supp. III).

Although this provision describes the Rules' effect on cases filed under the New Code, and thus does not directly apply to Geiger's first petition which was filed under the Bankruptcy Act, it clearly demonstrates Congress' intent that the old Bankruptcy Rules not override provisions of the New Code. Section 403(a) does apply to Geiger's original petition, and the Court of Appeals erroneously relied upon Rule 11–42(a) to override its clear command.

the sole function of the courts is to enforce it according to its terms." *Caminetti* v. *United States,* 242 U. S. 470, 485 (1917). While the Court of Appeals may have reached a practical result, it was a result inconsistent with the unambiguous language used by Congress. Accordingly, the petition for a writ of certiorari is granted, and the judgment is reversed.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE MARSHALL joins, dissenting.

If a bankruptcy judge, with the consent of all parties to a proceeding commenced prior to October 1, 1979, correctly concluded that the best interest of the estate and all its creditors and the judiciary would be served by permitting the voluntary dismissal of that proceeding and the immediate commencement of a new proceeding under the New Code, would that action be prohibited by § 403(a) of the Bankruptcy Reform Act of 1978, Pub. L. 95–598, 92 Stat. 2683, note preceding 11 U. S. C. § 101 (1976 ed., Supp. IV)? I think not. Although two creditors objected to the dismissal in this case, the Court today leaves no doubt about its answer to this question. Despite its recognition that "the Court of Appeals may have reached a practical result," *ante,* this page, and that "consolidation of Geiger's petition with those of its subsidiaries and affiliates would serve the best interests of the estate [and] would conserve judicial resources," *ante,* at 359, the Court holds that Congress expressly forbade such a result when it enacted § 403(a).

It seems most unlikely that Congress would have commanded the result the Court reaches today if it had contemplated the set of facts confronting the Bankruptcy Court in this case. The purpose of the New Code was to modernize the bankruptcy laws and to make the system more workable and efficient. H. R. Rep. No. 95–595, pp. 3, 52 (1977). Per-

mitting Geiger to dismiss its petition under the Bankruptcy Act and to file a petition under the New Code, thereby facilitating consolidation of its petition with the petitions of its numerous affiliates and subsidiaries, is perfectly consistent with the spirit of both bankruptcy statutes.

Moreover, I believe that the Court of Appeals' holding is faithful to the language of § 403(a). That provision contains two commands relating to proceedings commenced prior to the effective date of the New Code; one command is procedural and the other is substantive. The procedural command requires that proceedings commenced prior to October 1, 1979, be conducted under the Bankruptcy Act.[1] The substantive command requires that the rights of the parties in such proceedings continue to be governed by that statute.[2]

The procedural command was followed in this case. The original petition was filed on August 15, 1979, and was dismissed pursuant to Rule 11–42(a) of the Rules applicable to cases commenced under the Bankruptcy Act. That Rule expressly authorizes a voluntary dismissal based upon a finding that such action is "in the best interest of the estate."[3] As

---

[1] "A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if [the New Code] had not been enacted . . . ." 92 Stat. 2683, note preceding 11 U. S. C. § 101 (1976 ed., Supp. IV).

[2] Section 403(a) continues: "[A]nd the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the [New Code] had not been enacted."

[3] Rule 11–42(a) relating to voluntary dismissals provides in pertinent part:

"On the filing of such application or motion, the court shall . . . enter an order, after hearing on notice dismissing the case or adjudicating him a bankrupt whichever may be in the best interest of the estate."

In this case the Bankruptcy Judge, after a full hearing, made these findings:

"The motion is governed by the provisions of 11–42 of the Rules of Bankruptcy Procedure. It is unique in that the purpose of dismissal is to per-

the Court of Appeals noted, "the best interests of the estate must be interpreted to mean those of the creditors as well as the debtor,"[4] and whether dismissal of the original petition and refiling under the New Code is in the best interest of the creditors in this case is not clear from the record. The Court of Appeals instructed the Bankruptcy Court to consider on remand whether a refiling under the New Code and consolidation of the bankruptcy petitions of Geiger and its affiliates and subsidiaries would affect the creditors' substantive rights. If substantive rights of the creditors "are in fact materially prejudiced," *In re Geiger Enterprises, Inc.*, 635 F. 2d 106, 109 (CA2 1980), then dismissal of the originial petition will not be permitted. If dismissal is determined to be in the best interest of all parties, then such action is permitted by Rule 11–42(a); the procedural command of § 403(a), therefore, will have been satisfied.

Likewise, the Court of Appeals' disposition assures that the substantive command of § 403(a) will be followed. If dismissal is in the best interest of the estate, meaning in this case that the creditors' substantive rights are not materially prejudiced, then dismissal of the original petition is authorized by the Bankruptcy Act. In such a case, the creditors'

---

mit refiling under compatible substantive law provisions and distribution rules and, thus, permit substantive consolidation. In opposing the motion, the parties have argued that Congress did not intend to permit this result. To the contrary, there is no reason to believe that the Congress even envisioned a problem such as that at hand.

"Practical, economical and expeditious administration and the avoidance of unnecessary and costly litigation by the alternative approach suggested by the Government [piercing the corporate veil of the affiliate and subsidiary corporations and bringing them under the Bankruptcy Act] render dismissal to permit refiling to be in the best interest of this estate." App. to Pet. for Cert. A–11.

[4] *In re Geiger Enterprises, Inc.*, 635 F. 2d 106, 109 (CA2 1980) (citing *Banque de Financement* v. *First National Bank of Boston*, 568 F. 2d 911, 921–922 (CA2 1977)).

substantive rights would have been governed by the Bankruptcy Act, not by the New Code. This satisfies the substantive command of § 403(a).

Even if I were persuaded that Congress intended to enact the inflexible rule the Court enforces today, I still would not decide that issue in this case. It is probable that the question raised by the certiorari petition would become moot if the Court were to follow its normal practice of declining to review interlocutory orders.[5] The United States, which has a $2,075,674.64 tax claim at stake, while agreeing with this Court's reading of § 403(a), recognizes that the question is of "limited administrative importance" and does not merit review by this Court.[6] The only practical consequence of the Court's holding is to impose unnecessary work on busy federal judges. The Bankruptcy Court and three Circuit Judges recognized that it would be more efficient to conduct a single consolidated proceeding rather than separate proceedings for a group of affiliated bankruptcy petitioners. Meanwhile, this Court expends its scarce time and energy in a case that at best involves an error that is harmless to the parties and the law.

I respectfully dissent.

---

[5] Considering only one creditor, the United States, given the differences in treatment accorded tax claims under the two statutes, see 635 F. 2d, at 109, it is unlikely that the Bankruptcy Court would find that it is in the best interest of the Government to proceed under the New Code.

[6] In explaining why there is no need for this Court to grant certiorari, the Solicitor General stated:

"Despite the error of the decision below, we did not seek certiorari because of the absence of a conflict among the courts of appeals, the possibility that the government may prevail in the proceedings on remand, and the limited administrative importance of the question presented dealing with the transitional rules governing the enactment of the new Bankruptcy Code." Memorandum for United States 5.