In re Gary Erwin **ALBERTSON** & Wylene Carol Albertson, Debtors.

**Bankruptcy No. 86–01932–2–11.**

United States Bankruptcy Court
W.D. Missouri.

Jan. 14, 1987.

---

Joel Pelofsky, Shughart, Thomson & Kilroy, Kansas City, Mo., for debtors.

David DeTar Newbert, Kansas City, Mo., for Farmers Home Admin.

Dennis Dow, Kansas City, Mo., for Equitable Life Assur.

## MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

This matter comes before the Court on debtors' Motion to Convert to Chapter 12, and the opposition thereto filed by the Farmers Home Administration and Equitable Life Insurance Company. The Court regarded this as a two part problem:

1. Can the Court convert an existing Chapter 11 proceeding to a Chapter 12 proceeding?

2. If it has the power to do so, is it equitable under the circumstances of the given case to do so?

Only the first or threshold question is considered in this case.

Because a conclusion of law is what generates the Court's ruling, there is no need to recite the facts other than the following brief synopsis.

Debtors filed for reorganization on April 25, 1986. Debtors filed their Disclosure Statement and Plan on September 29, 1986. A hearing was had on December 1, 1986, and objections to the Disclosure Statement were sustained and debtors given 20 days to amend, convert or dismiss. Debtors filed their Motion to Convert to Chapter 12 on December 18, 1986. This hearing was had on December 31, 1986. Debtor was given until January 6, 1987 to file additional briefs in response to the briefs filed by the objectors.

The Bankruptcy Judges, United States Trustees and Family Farmers Bankruptcy Act of 1986 (P.L. 99–554) as signed by the President on October 27, 1986, and effective on November 26, 1986, contained in Section 302 the following language:

"(c) Amendments Relating to Family Farmers ... (1) The amendments made by subtitle B of title II shall not apply with respect to cases commenced under Title 11 of the United States Code before the effective date of this Act".

All of the provisions pertaining to Chapter 12 are contained in subtitle B of Title II and it therefore appears that conversion, even if found equitable by the Court, is not available to those debtors whose cases were on file before November 26, 1986. Debtors seek to avoid such a disposition as being contrary to the intent of Congress as shown by the Joint Explanatory Statement of The Committee of Conference, as well as the legislative history. This Court agrees that it is clear Congress intended a qualified privilege of conversion from existing Chapter 11 and Chapter 13 cases. Unfortunately, this Court finds itself *legally* unable to consider such a history by virtue of the previous law as announced by the United States Supreme Court in such cases as *In re Geiger*, 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982); *Caminetti v. United States*, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); *Hamilton v. Rathbone*, 175 U.S. 414, 20 S.Ct. 155, 44 L.Ed. 219 (1899).

To boil those cases down to a simple proposition, the rules are that if the law is clear, the courts should give effect to the law and not search for or attempt to discover intent or hidden meanings. More vernacularly it might be stated: "If you think you understand it—Apply it". Before the Court should look at legislative history or other extraneous material, the Court must find that the law is ambiguous or unclear. Nor is it the function of the Court to strive for ambiguity, but rather to

presume that if there is a reasonable interpretation, it should be given full effect.

This Court is not unaware that from time to time, the Supreme Court has been willing to delve beyond the literal meaning of a statute in order that its purpose may not fail. *E.g., Watt v. Alaska,* 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). In rejecting Secretary Watt's argument that the clarity of the federal statute made it unnecessary to resort to its legislative history, the court invoked the pronouncements of Judge Learned Hand in *Cabell v. Markham,* 148 F.2d 737, 739 (2d Cir.) *aff'd,* 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945): "[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." 451 U.S. at 266, n. 9, 101 S.Ct. at 1678 n. 9.

Citing its *Watt v. Alaska* decision, the court in *C.I.R. v. Engle* stressed the significance of circumstances surrounding enactment of a statute. In *Engle* the court determined that the statute under consideration had been passed by Congress in response to public outcries over the country's dependence on foreign energy and alleged excessive profits earned by major oil companies. Because the legislative history of the bill demonstrated that Congress wanted to encourage domestic oil production and improve the position of small producers, and since "[a]ny reasonable interpretation of the statute therefore, must harmonize with this goal", 464 U.S. 206, 217–18, 104 S.Ct. 597, 604–05, 78 L.Ed.2d 420 (1984), it followed that the appropriate interpretation of the passage in question was the one that would most benefit small oil producers.

The court held similarly in *Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983): "It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute". In *Bob Jones* the court rejected the plain language argument of the university, quoting *Brown v. Duchesne,* 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1857):

"The general words used in the clause ..., taken by themselves and literally construed, without regard to the object in view, would seem to sanction the claim of the plaintiff. But his mode of expounding a statute has never been adopted by any enlightened tribunal—because it is evidence that in many cases it would defeat the object which the Legislature intended to accomplish. And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, *but will take in connection with it the whole statute ... and the objects and policy of the law* ". (emphases added by *Bob Jones* opinion)

*Id.,* 461 U.S. at 586, 103 S.Ct. at 2025. *Accord Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374 (1974) (determining that income tax refund is property of the bankruptcy estate); *Boston Sand Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 54, 73 L.Ed. 170 (1928) (finding plain meaning rule an axiom of experience rather than a rule of law); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976).

It is also error to read any section of a statute in isolation. "[W]e must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy". *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 595, 592, 7 L.Ed.2d 492 (1962) (quoting) *Mastro Plastics Corp. v. National Labor Relations Board,* 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956). *Accord Boys Markets Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 250, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970); *United States v. Hutcheson,* 312 U.S. 219, 235, 61 S.Ct. 463, 467, 85 L.Ed. 788 (1941).

*Garcia v. United States,* 469 U.S. 70, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984), which

consulted the legislative history of a statute proscribing assault and robbery of custodians of property of the United States even though it found wording of the act was clear, is the most recent of a line of cases that require a rare or exceptional circumstance to trigger a search of legislative history:

"[W]e are satisfied that the statutory language with which we deal has a plain and unambiguous meaning. While we now turn to the legislative history as an additional tool of analysis, we do so with the recognition that only the most extraordinary showing of contrary intentions from the data would justify a limitation on the 'plain meaning' of the statutory language. When we find the terms of a statute unambiguous, judicial inquiry is complete, except in 'rare and exception circumstances' ".

*Accord Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *Howe v. Smith,* 452 U.S. 473, 483, 101 S.Ct. 2468, 2475, 69 L.Ed.2d 171 (1981); *Aaron v. SEC,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1956, 64 L.Ed.2d 611 (1980); *TVA v. Hill,* 437 U.S. 153, 187, n. 33, 98 S.Ct. 2279, 2298, n. 33, 57 L.Ed.2d 117 (1978). However, the problem with this line of cases is that almost inevitably, the Court concluded that the legislative intent supported the plain or unambiguous meaning of the statutory words, not the obverse; and that the words complained of did allow two (or more) interpretations.

■ This Court has, therefore, studied Section 302 to see if it can find some way to proclaim the elusive ambiguity in the section itself or in some other portion of the enactment in order to go behind the legislation to the Conference Report or the legislative history.

The proponents of conversion advocate ambiguity as shown by Section 302 as opposed to Section 256, now a portion of Section 1112 (11 U.S.C. § 1112(d)(3)) which as now amended reads, in pertinent part, as follows:

"The court may convert a case under this chapter to a case under Chapter *12 or* 13 of this title only if—

(1) the debtor requests such conversion; (and)

(2) the debtor has not been discharged under section 1141(d) of this title; *and*

*(3) if the debtor requests conversion to Chapter 12 of this title, such conversion is equitable.* (amendments underlined).

Unfortunately, this Court cannot find ambiguity therein. It is just as easy to read Section 256 as applying to only cases commenced after November 26, 1986, as applying to all cases no matter when filed.

Congress, in the past, has created timing distinctions in debtors who could avail themselves of the provisions of the new Bankruptcy Code—namely those who filed their petitions for relief after November 1, 1979—and those who could not—namely those who filed their petitions at any time before 12:00 midnight on October 31, 1979. For any parties who doubt Congress really would so differentiate and deny the early filers the benefits of the Code, see *In re Geiger,* supra.

Other proponents of conversion suggest that Section 302 is unclear by applying the word "before" to mean that a court may not convert to Chapter 12 *before* November 26, 1986 but can convert *after* November 26, 1986.

This Court wishes it could be convinced that such an application was reasonable, grammatical or proper. It can find none of the above. If "before" modifies "effective date" rather than "cases commenced under Article II of the United States Code" not only were the efforts of this Judge's past English teachers (who in that distant past forced diagramming and parsing of sentences ad infinitum, ad nauseum) wasted, but their earthly remains would take on gyroscopic manifestations.

If then there is not ambiguity, this Court must rule in conformity with the language that Congress enacted. Try as the Court may, it cannot escape the decision in *Caminetti v. United States* (supra). There Congress had passed the so called "White Slavery Cases" which were clearly designed to

eliminate organized prostitution and the interstate transportation of prostitutes from state to state. There was nothing in the legislative history, in a conference report, in anything but the plain words of the statute that indicated the simple act of an amorous male crossing from one state to another in the company of a lady of the night, an old acquaintance, a new acquaintance, or a total but like minded stranger, made fornication a federal crime in the second state if he provided the means of transport. It may be cold comfort to Mr. & Mrs. Albertson, but they may regard themselves in the company of F. Drew Caminetti, Charles Chaplin and Errol Flynn as victims of the difference between what Congress may have intended to say and did say. Every aspect of this new legislation cries out that conversion was intended, except for the words it was couched in. The Court perceives that it must apply the words, not the intent, for to do otherwise would mean that the Court had usurped the function of the legislative body.

The function of the judiciary is to apply the law—not make it or enforce it. As long as the words are clear and subject to unambiguous interpretation, the Court reluctantly finds itself unable to rule in any other fashion.

Debtors' Motion to Convert to Chapter 12 is, therefore, DENIED.