**In re BIG DRY ANGUS RANCH, INC., Debtor.**

**Bankruptcy No. 86–40023.**

United States Bankruptcy Court, D. Montana.

Feb. 5, 1987.

Stephen C. Mackey, Billings, Mont., for debtor.

Malcolm H. Goodrich, Billings, Mont., for FLB.

Thomas M. Monaghan, Miles City, Mont., for First Nat. Bank of Miles City.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

The issue in this case is whether the Debtor-in-Possession, a family farmer, may convert this proceeding from Chapter 11 of Title 11 to Chapter 12. At the date the recently enacted "Bankruptcy Judges, United States Trustees and Family Farmer Act of 1986", P.L. 99–554, became effective on November 26, 1986, the Debtor's Chapter 11 proceeding was pending, having been filed January 13, 1986.

Section 302(c) of the Family Farmers Act provides:

"Amendments Pertaining To Family Farmers—(1) The amendments made by subtitle B of Title II shall not apply with respect to cases commenced under Title 11 of the United States Code before the effective date of this Act."

One of the amendments made by subtitle B of Title II under Section 256 of the Act was to Section 11 U.S.C. § 1112:

"Sec. 256. Conversion From Chapter 11 to Chapter 12. Section 1112(d) of Title 11, United States Code is Amended—

(1) by inserting "12 or" before "13",

(2) in paragraph (1) by striking out "and" at the end thereof,

(3) in paragraph (2) by striking out the period at the end thereof and inserting "and", and

(4) by inserting after paragraph (2) the following: '(3) if the debtor requests conversion to Chapter 12 of this title, such conversion is equitable.' "

As a result of Section 256, Section 11 U.S.C. § 1112(d) now reads:

"(d) The court may convert a case under this Chapter to a case under Chapter 12 or 13 of this title only if—

(1) the debtor requests such conversion;

(2) the debtor has not been discharged under Section 1141(d) of this title, and

(3) if the debtor requests conversion to Chapter 12 of this title, such conversion is equitable."

The Joint Explanatory Statement of the Committee of Conference of Senate and House members states:

"APPLICABILITY OF CHAPTER 12 TO PENDING CHAPTER 11 AND 13 CASES.

It is not intended that there be a routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead it is expected that courts will exercise their sound discretion in each case, in allowing conversion only where it is equitable to do so.

Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12.

Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow discretion. For example, the court may consider whether the petition was recently filed in another Chapter with no further action taken. Such a case may warrant conversion to the new Chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, the availability to convert to the new Chapter should be limited."

Needless to say, the conference report smacks with inconsistency to the literal reading of Section 302(c) of the Act.

The Debtor-in-Possession on December 23, 1986, filed its Motion to Convert this case to Chapter 12, on grounds it was eligible as a farmer under the criteria of

Chapter 12, and conversion was equitable because the family farm operation would materially benefit by the provisions of the new law, under which it can more realistically operate, without prejudice to any creditor. No Chapter 11 Plan of Reorganization has yet been filed in this case. The motion has met with resistance from Federal Land Bank of Spokane (FLB), which places squarely in issue the right of the Debtor to convert by reason of Section 302(c). FLB argues 302(c) prohibits conversion of a pending Chapter 11 case to Chapter 12 inasmuch as Section 1112(d) as amended, does not apply to cases commenced before the effective date of the Family Farmer Act. FLB also disputes that conversion would be equitable, since more than one year has elapsed with no Plan filed, thus showing such unreasonable delay proves the Debtor's inability to effect a Plan, and the present Motion to Convert is nothing more than a "ploy" to further delay the legitimate rights of creditors. The file reflects that FLB filed a Motion to Dismiss the Chapter 11 case because of the unreasonable delay, which then led this Court to order the Debtor to file a Disclosure Statement and Plan of Reorganization on or before December 23, 1986, or the case would be dismissed for failure to prosecute the proceeding with diligence. The Debtor's response to that Order was the present Motion to Convert to Chapter 12.

FLB, in its memorandum, submitted two unreported cases dealing with the question of conversion. *In re B.A.V. Inc.,* 68 B.R. 411, (Bankr.Colo.1986) and *In re Tomlin Farms, Inc.,* 68 B.R. 41, (Bankr.N.D.1986). Both courts held conversion of a pending case was not possible since the language of the statute was clear and unequivocal. Both decisions hold that in arriving at the meaning of a statute, if the language is plain, it is improper to look beyond that language to the legislative history. *In re B.A.V. Inc.* cites as authority *Central Trust Co. v. Offical Creditors Committee,* 454 U.S. at 359–60, 102 S.Ct. at 697–98,

while *Tomlin Farms* relies upon *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) In addition, *Tomlin Farms,* adopted the rationale of *United States v. Oregon,* 366 U.S. 643, 648, 81 S.Ct. 1278, 1280, 6 L.Ed.2d 575 (1961) ostensibly holding "that committee language suggesting an application contrary to the plain words of the statute itself is not sufficiently compelling to justify deviation from the language of the statute itself", and "[L]egislative history may not be used to create the ambiguity" citing *U.S. v. Public Utilities Comm'n,* 345 U.S. 295, 315, 73 S.Ct. 706, 717, 97 L.Ed. 1020 (1953). *Tomlin Farms* suggests the most recent Supreme Court case dealing with statutory construction is *United States v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1793, 85 L.Ed.3d. 64 (1985), where the Court held:

> "There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.—Nor is the judiciary licensed to attempt to soften the clear impact of Congress' chosen words whenever a court believes these words lead to harsh result.—On the contrary, deference to the supremacy of the legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally require us to assume that 'the legislative purpose is expressed by the ordinary meaning of the words used'.—Going behind the plain language of a statute in search of a possible contrary congressional intent is 'a step to be taken cautiously' even under the best of circumstances. *United States v. Locke,* 105 S.Ct. at 1793 (citation omitted)." [1]

The Debtor has introduced at the hearing on the Motion to Convert, cash flow projection of income and expenses through April, 1988, which forms the basis of the proposed Plan. More important to the Debtor, it claims the requirements of adequate protection available to FLB under

---

**1.** *Locke,* 471 U.S. at 93, 105 S.Ct. at 1791, also holds " * * * we will not allow a literal reading of a statute to produce a result 'demonstrably at odds with the intentions of its drafters'. *Griffin v. Oceanic Contractors, Inc.* 458 U.S. 564, 571 [102 S.Ct. 3245, 3250, 73 L.Ed.2d 973] (1982)."

Chapter 11, as well as the requirements of 1129(a)(7) and 1129(b), could probably not be met by the Debtor in Chapter 11 and further, that Section 1111(b)(2) provision available to FLB "looms" as a potential roadblock to reorganization.

Of course, Chapter 12 has abrogated the adequate protection rule of *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984), on lost opportunity cost payments,[2] as well as abolished the absolute priority rule of 1129(b) of Chapter 11,[3] together with the attendant right of the undersecured creditor to utilize the provisions of Section 1111(b)(2). The secured creditor's lien under Chapter 12 may now be reduced down to current property value as the basis for payment of the secured claim. Thus, there is no provision in Chapter 12 by which a secured party may recoup what it loses on present valuation in the event the value of the property should increase following reorganization. The above gives a brief description of the major differences between Chapter 11 and Chapter 12, thus leaving one with the impression that Chapter 12 is more debtor oriented than Chapter 11.

■ The latest word from the United States Supreme Court on statutory construction came in a bankruptcy case setting in *Kelly v. Robinson*, — U.S. —, 107 S.Ct. 353, 93 L.Ed.3d 216, 65 B.R. 17 (advance sheet) (1986). The court was faced with the dischargeability of a criminal restitution order issued by a Connecticut state court, and concluded, (1) the debtor's restitution obligation was a debt subject to bankruptcy jurisdiction, and (2) was automatically nondischargeable under Section 523(a)(7) of the Bankruptcy Code, which provides that a discharge in bankruptcy does not affect any debt that "is a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss". A fair reading of the statute involved indicates on its face that Section 523(a)(7) protects criminal fines, but not restitution orders, which generate funds for the victims, and thus constitute "compensation for actual pecuniary loss". The Supreme Court, however, not only examined the words of the statute but reviewed the history of Section 523(a)(7), its predecessor act and the public policy question of state interest in administration of its criminal justice system. The pertinent matter in the opinion on statutory construction seems in my view, to indicate the bankruptcy decisions from the Colorado and North Dakota districts noted above, have misplaced the proper application of the test of statutory construction. The Supreme Court held:

"The Court of appeals' decision focused primarily on the language of §§ 101 and 523 of the Code. Of course, the 'starting point in every case involving construction of a statute is the language itself'. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 [95 S.Ct. 1917, 1935, 44 L.Ed.2d 539] (1975) (Powell, J. concurring). But the text is only the starting point. As Justice O'Connor explained last term, " ' "In expounding a statute,

---

**2.** *American Mariner* has been specifically rejected in *In re Timbers of Inwood Forest Associates*, 793 F.2d 1380 (5th Cir.1986), aff'd en banc, 808 F.2d 363. *American Mariner* is still the rule in this circuit on Chapter 11 cases dealing with adequate protection.

**3.** Section 1129(b), which adopts the absolute priority rule, prevents stockholders or equity owners from retaining stock over objection of unsecured creditors, or junior lienholders, who were not being paid in full under the confirmed plan. Applied literally, such section has the effect of denying the individual debtor the use of cramdown if the debtor is retaining any property at all, including exempt property or property which is fully encumbered. To circumvent such result, the court in *In re Ahlers*, 794 F.2d 388 (8th Cir.1986), held the farm debtor's contribution of labor and skills could justify retention of the assets since such labor was like the infusion of new capital into the business, and was compatible with the absolute priority rule as held in *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). See for example, on the application of 1129(b) in a farm case: *In re Tomlin*, 22 B.R. 876 (Bankr.M.D.Ala.1982); *In re Pecht*, 57 B.R. 137 (Bankr.E.D.Va.1986); *In re Stegall*, 64 B.R. 296 (Bankr.C.D.Ill.1986). One of the motivating factors for adoption of Chapter 12 was abolition of the absolute priority rule. 132 Cong.Rec., No. 60, S.5556 (5–7–86).

we we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its objects and policy." ' " *Offshore Logistics Inc. v. Tallentire*, 477 U.S. [——] [106 S.Ct. 2485, 91 L.Ed.2d 174] (1986) (quoting *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 285 [76 S.Ct. 349, 359, 100 L.Ed. 309] (1956), [quoting *United States v. Heirs of Boisdore*, 8 How. 113, 122 [12 L.Ed. 1009] (1849, 1850)]. In this case, we must consider the language of §§ 101 and 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the states in unfettered administration of their criminal justice systems."

Thus the court went beyond the plain reading of the statute. Taking heed with such approach, the right of a debtor farmer to convert from Chapter 11 or 13 to Chapter 12 must be examined not only from the starting point of §§ 256 and 302(c), but also the policy considerations behind enactment of Chapter 12 itself.

■ In view of the present litigation,[4] and that now experienced by other bankruptcy courts, a question certainly exists as to whether a case pending upon the effective date of Chapter 12 (November 26, 1986) may be converted to Chapter 12, upon equitable considerations. Most assuredly, the text of the 1986 Act as set forth above in this opinion and the express language of the conference report can be read to give opposite results. 11 U.S.C. § 1112(d) now provides that conversion can be made from Chapter 11 to Chapter 12 where such conversion is equitable. I place more emphasis on that section than I do the transition language of Section 302(c)(1). Considering the Act as a whole, in light of Congressional policy "to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land" and that "Under this new Chapter, it will be easier for a family farmer to confirm a Plan of Reorganization", (Conference Report, Overview of Family Farm Subtitle,

132 Cong.Rec. H.8998), I conclude conversion of a pending Chapter 11 case to Chapter 12 is permissible. The bottom line is successful reorganization in any Chapter which allows for such result. The legislative history of Chapter 12 is replete with dialogue that Chapter 11 was simply not working for the family farmers. As Senator Grassley stated:

"To the extent that adjustments are needed in the Code, Congress must be willing to do its part—not as a solution to the farm crisis—but at a minimum, Congress should insure that farmers have the same opportunity to reorganize that all other businesses and individuals have. * * * The testimony in the Senate Judiciary Committee hearings revealed that farm debtors in a bankruptcy need help in four specific areas. Each of these is addressed in my proposed Chapter 12 amendment." 132 Cong.Rec., No. 60, S.5555.

Congressman Synar reflected the sense of the legislation with these words:

" * * * Those family farmers who are facing that brink of disaster where they would have to be thrown off their farms can now look to this Congress and to this government for new hope. That new hope is that we are going to give them the same standard that a small businessman or an individual has at the present time, which is the ability to reorganize." 132 Cong.Rec. H.9000.

Reprinted in the Senate Report on H.R. 5316, the final version of all congressional effort in this area, was the "Analysis of Pending Bills to Provide Family Farm Debtor Relief Under the Bankruptcy Code", by John D. Anderson, prepared pursuant to a special request from counsel for the Committee on the Judiciary of the United States Senate, which reads in part (132 Cong.Rec. S.15075):

"In 1982, this writer predicted that the financial problems and economies of the farming industry would rise to a level of national concern and that the exist-provisions of the Bankruptcy Code were not

---

**4.** Five other Motions to Convert, each being    resisted, are presently pending before the Court.

adequate to deal with the problems of farmers and to reorganize them financially. These predictions have come true, and the farming industry has virtually collapsed. The income derived by farmers from their crops has not been sufficient to keep up with the costs of operation, after taking into consideration the capital necessary to conduct the business and the natural disasters attendant with the business of farming.

Because these dire predictions have become true, there is legislative movement in Congress to remedy the farmers' plight through amendments to the Bankruptcy Code which would give farmers financial relief. This article will analyze the problems unique to farmers (creating their need for relief), pending family farm relief bills and legislation before Congress, and the provisions of the competing bills which should be adopted by Congress."

The analysis went on to describe the peculiar problems farmers face besides the over-all economic plight, such as natural catastrophies causing crop loss, downturn in crop prices, top heavy debt required for working capital, over production—all of which has "created an unprecedented collapse in the farming community and farm-related businesses". *Id.* at S.15076.

The Conference Report of the Joint House-Senate Committee which put together a final bill now passed into law as Chapter 12 further states that "it is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12". This, combined with the further discussion in this Conference Report on the factors which the court should consider in ruling on conversion of pending cases, seems clearly to express an intent that conversion be allowed in some cases. As an indicator of congressional intent, the fact that the language on conversion is included in the Conference Report is certainly stronger than if we had a situation where the comments were made by an individual legislator. Finally, as a practical matter, the entire conversion issue may be avoided by simply dismissing the Chapter 11 or 13 case, and refiling under Chapter 12.[5] I doubt that the fortuitous day of November 26, 1986, the date of enactment, requires such superfluous action.

Nor does this holding do violence to Section 302(c). Under 302(c), Family Farmer amendments do "not apply with respect to cases commenced under the Bankruptcy Code before the effective date of the Act". This simply means the provisions of the Act shall not be given retroactive application, nor shall such provisions be applicable to questions or issues in Chapter 11 or 13 cases, such as in the area of adequate protection or sale of property. Those provisions are peculiar to Chapter 12.[6] After November 26, 1986, however, § 1112(d) is in effect and a case pending on or after "that date" can be converted under such section, if it is equitable. Upon conversion by the Court, a new case is created under Chapter 12, so that the new provisions of that Chapter, streamlined for family farmers, are prospectively applied. With this interpretation, both the statutory language

---

**5.** But this matter too is not clear from doubt in view of *Central Trust Co. v. Official Creditors Committee (In re Geiger)*, 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982), where the court held that a debtor could not dismiss a Chapter XI Act case in order to file under Chapter 11 of the 1978 Code, in view of Section 403(a) of the Bankruptcy Reform Act of 1978. Arguably, Section 403(a) is much stronger in text, and different policy reasons were present.

**6.** For example, on adequate protection, the holding of *American Mariner* has been specifi-

cally rejected by Section 1222. In this circuit, under 302(c) a debtor in a Chapter 11 case cannot use the provisions of 1222 to argue that *American Mariner* is no longer applicable in Chapter 11 cases. Likewise, no one can successfully make the argument that the absolute priority rule means something different than intended by 1129(b), except in farm cases in the Eighth Circuit where *In re Ahlers*, 794 F.2d 388 (8th Cir.1986) may have changed that rule of law.

of 302(c) and congressional intent mesh and become compatible. Certainly a conversion to Chapter 12 (much like a new filing) to achieve congressional "object and policy" would apply the law of Chapter 12 to that case, irrespective of the law in effect when the original case was filed. It seems to me that such interpretation comports with the test of *Kelly v. Robinson,* supra, effects congressional intent as evinced by the Conference Report, and answers as a practical matter, whether the family farmer can successfully reorganize. To hold otherwise would exalt form over substance.

I turn now to whether the facts allow the conversion on equitable grounds. The proposed Plan classifies FLB as a secured creditor in the sum of $289,000.00 based on the present value of its collateral. The Proof of Claim of FLB is $303,407.37. FLB is thus virtually fully secured, and will receive annual payments of $25,196.35 over 20 years at 6% interest. The other secured creditor, ($11,600.00) is fully secured, and will be paid over 3 years at $4,501.16 per year, with unsecured claims of FLB ($14,407.32) and First National Bank of Miles City ($585,678.73) paid from the balance of the Debtor's disposable income. The cash flow summary shows an increase of available cash from January, 1987, from $22,648.00 to $52,058.00, based on anticipated farm income of $61,000.00. It appears the Debtor may have sufficient income to fund the Plan, although the amount payable to unsecured creditors would be minimal. Whether such Plan can be confirmed and the debt of FLB restructured as proposed will have to await hearing on confirmation. By this decision, I do not indicate a final conclusion one way or the other. I think it is clear however that Chapter 11 hurdles cannot be successfully cleared by the Debtor. All matters considered, I hold the conversion of this case to Chapter 12 is equitable.

IT IS ORDERED the Debtor's Motion to Convert this proceeding to Chapter 12 is granted.