**In re Robert N. MASON d/b/a Cerro Indio Farms, Debtor.**

**Bankruptcy No. 86–21110.**

United States Bankruptcy Court, W.D. New York.

Feb. 17, 1987.

Bernard L. LeViner, Ontario, N.Y., for debtor.

Newman, Kehoe, Wunder & Bartlett by Richard C. Wunder, Lyons, N.Y., for creditor Federal Land Bank.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

In this case, the debtor filed under Chapter 11 on August 22, 1986. He now has moved to convert the Chapter 11 case to Chapter 12. When the motion was on to be heard, the Court and the parties addressed themselves to whether a case filed under Chapter 11 prior to the effective date (November 26, 1986) of the Family Farmer Act (the "Act") could be converted to Chapter 12. The hearing on factual issues has been held in abeyance until the law issue is decided.

The parties have argued and briefed the legal issue. It appears that Public Law 99–554 § 302(c) reads as follows:

(c) AMENDMENTS RELATING TO FAMILY FARMERS.—(1) The amendments made by subtitle B of title II shall not apply with respect to cases commenced under title 11 of the United States Code before the effective date of this Act.

Section 256 of subtitle B provides for the conversion of bankruptcy cases from Chapter 11 to Chapter 12. This has been codified in 11 U.S.C. § 1112(d) which reads in part as follows:

(d) The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if—

(1) the debtor requests such conversion;

(2) the debtor has not been discharged under section 1141(d) of this title; and

(3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable.

Because the provisions of subtitle B are not applicable to bankruptcy cases commenced prior to the effective date of the

Act, conversion of pre-Act cases to Chapter 12 is, apparently, prohibited. Nevertheless, a section of the legislative history entitled "Applicability of Chapter 12 to Pending Chapter 11 and 13 Cases," clearly states that:

> [I]t is not intended that there be routine conversion of Chapter 11 and 13 cases, pending at the time of enactment, to Chapter 12. Instead, it is expected that courts will exercise their sound discretion in each case, in allowing conversions only where it is equitable to do so.
>
> Chief among the factors the court should consider is whether there is a substantial likelihood of successful reorganization under Chapter 12.
>
> Courts should also carefully scrutinize the actions already taken in pending cases in deciding whether, in their equitable discretion, to allow conversion. For example, the court may consider whether the petition was recently filed in another chapter with no further action taken. Such a case may warrant conversion to the new chapter. On the other hand, there may be cases where a reorganization plan has already been filed or confirmed. In cases where the parties have substantially relied on current law, availability to convert to the new chapter should be limited.

H.R.Rep. No. 99–958, 99th Cong., 2nd Sess., at 48–49 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5227, 5249–50.

To date, six opinions[1] have been written that treat the issue of converting pre-Act cases to Chapter 12. Of the six, five have concluded that pre-Act cases may never be converted to Chapter 12 because the language of § 302(c) unambiguously expresses the intent of Congress to prohibit such conversions. The sixth case, *Erickson,* has concluded that pre-Act cases may, under limited circumstances, be converted to Chapter 12 because the House-Senate Conference Report advocating conversion most accurately mirrors the intent of Congress.

"A fundamental rule of statutory construction is that where no ambiguity appears, the clear and explicit terms of a statute will be conclusively presumed to express the legislative intent." 73 Am. Jur.2d, Statutes § 194. "A plain and unambiguous statute is to be applied, not interpreted." *Id.* Nevertheless, where, as here, statutory language is at cross purposes with unequivocal legislative history, courts have favored the legislative history as expressing the true intent of Congress.

In a long line of cases, the Supreme Court has maintained that in any case concerning the interpretation of a statute, "the 'starting point' must be the language of the statute itself." *Lewis v. United States,* 445 U.S. 55 at 60, 100 S.Ct. 915 at 918, 63 L.Ed.2d 198 (1980), *citing Reiter v. Sonotone Corp.,* 442 U.S. 330 at 337, 99 S.Ct. 2326 at 2330, 60 L.Ed.2d 931 (1979). A recent pronouncement by the Supreme Court favoring strict application of the "plain meaning rule" was made in the case of *United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985). In that case the Court stated,

> There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.... Nor is the judiciary licensed to attempt to soften the clear import of Congress' chosen words whenever a court believes those words lead to a harsh result.... On the contrary, deference to the supremacy of the legislature, as well as recognition that congressmen typically vote on the language of a bill, generally require us to assume that the Legislative purpose is expressed by the ordinary meaning of the words used.... Going behind the plain language of a statute in search of a possibly contrary congressional intent is a step to be taken cautiously even under the best of circumstances.

---

**1.** *In re Tomlin Farms,* 68 B.R. 41 (Bktcy.D.N.D. 1986); *In re Albertson,* 68 B.R. 1017 (Bktcy.W.D. Mo.1987); *In re Groth,* 69 B.R. 90 (Bktcy.D. Minn.1987); *In re Konerza,* Bky. 3–86–2022, (Bktcy.D.Minn.1987); *In re Waetjen,* Bky. 4–86–3335, (Bktcy.D.Minn.1986); *Re re B.A.V. Inc.,* 68 B.R. 411 (Bktcy.D.Col.1986); and *In re Erickson Partnership,* 68 B.R. 819 (Bktcy.D.S.D.1987).

*United States v. Locke*, 105 S.Ct. at 1793 (citations omitted), *quoted in In re Tomlin Farms, Inc.,* 68 B.R. 41 (Bktcy.D.N.D. 1986).

In the case of *United States v. Oregon,* 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961), the Court stated that where the provisions of a statute "are clear and unequivocal on their face, we find no need to resort to the legislative history...." *Id.* at 648, 81 S.Ct. at 1280. In that case, the legislative history was not viewed as "sufficiently compelling to justify deviation from the plain language of a statute," since there was conflicting "evidence as to the intention of those who drafted the bill." *Id.*

In this case, however, there is no conflicting evidence as to legislative intent. The House-Senate Conference Report unequivocally advocates conversion of pre-Act cases to Chapter 12 under limited circumstances. Where the literal application of a statute is irreconciliably at odds with the drafters' intent, rigid adherence to the "plain meaning rule" has been tempered. Thus, in *Watt v. Alaska,* 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981), the Court admonished:

> The starting point in every case involving construction of a statute is the language itself, but the meaning apparent on the face of a single statute need not end the inquiry; statutes always have some purpose or object to accomplish ...; the plain meaning rule is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists, and the circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect.

451 U.S. 259 at 266, 101 S.Ct. 1673 at 1677 *citing Train v. Colorado Public Interest Research Group,* 426 U.S. 1 at 10, 96 S.Ct. 1938 at 1242, 48 L.Ed.2d 434 (1976); *Boston Sand Co. v. United States,* 278 U.S. 41 at 48, 49 S.Ct. 52 at 53, 73 L.Ed. 170 (1928); *United States v. Ryan,* 284 U.S. 167 at 175, 52 S.Ct. 65 at 68, 76 L.Ed. 224 (1931).

The reasoning from *Watt* was expanded in the case of *Norfolk Redevelopment & Housing Authority v. Chesapeake & Potomac Tel. Co.,* 464 U.S. 30, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983). In that case, the Court stated that,

> [T]he task of federal courts when engaging in statutory construction is to interpret the words of the statute in light of the purposes Congress sought to serve.

464 U.S. at 36, 104 S.Ct. at 307.

In discerning Congressional purposes, courts have been instructed to,

> assume that the legislative purpose of a statute is expressed by the ordinary meaning of the words used.... [W]hen the terms of a statute are unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances, *such as a clearly expressed legislative intention to the contrary.* (emphasis added).

*United States v. James,* — U.S. — at —, 106 S.Ct. 3116 at 3121, 92 L.Ed.2d 483 at 493 (1986).

In *James,* the unambiguous language of the statute was outcome determinative *because no clear statement of a contrary Congressional intent had been produced.* In the case at bar, a clear statement of legislative intent running counter to the express language of the statute does exist. In such a "case [ ] where the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters ... those intentions must be controlling." *Griffin v. Oceanic Contractors,* 458 U.S. 564 at 571, 102 S.Ct. 3245 at 3250, 73 L.Ed.2d 973 (1982) *quoting United States v. American Trucking Assns., Inc.,* 310 U.S. 534 at 543, 60 S.Ct. 1059 at 1063, 84 L.Ed. 1345 (1940). *See also Thornburg v. Gingles,* — U.S. —, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) where the Court explained that the "authoritative source" for determining legislative intent "lies in the committee reports on the bill." — U.S. at — n. 7, 106 S.Ct. at 2763 n. 7, 92 L.Ed. at 42 n. 7.

Twice before this Court has been admonished by the Second Circuit for following too literally the words of a controlling stat-

ute. In *In re Adamo,* 619 F.2d 216 (2nd Cir.1980), the Second Circuit said at page 222:

> The result of an obvious mistake should not be enforced, particularly when it "overrides common sense and evident statutory purpose." *United States v. Babcock,* 530 F.2d 1051, 1053 (D.C.Cir. 1976); *United States v. Brown,* 333 U.S. 18, 26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948). It is a well established principle of statutory construction that a statute should not be applied strictly in accord with its literal meaning where to do so would pervert its manifest purpose. Nowhere has this principle been expressed more eloquently than by Judge Learned Hand in his concurring opinion in *Guiseppi v. Walling,* 144 F.2d 608, 624 (2d Cir.1944), where he stated:

> There is no surer way to misread any document than to read it literally; in every interpretation we must pass between Scylla and Charybdis; and I certainly do not wish to add to the barrels of ink that have been spent in logging the route. As nearly as we can, we must put ourselves in the place of those who uttered the words, and try to divine how they would have dealt with the unforeseen situation; and, although their words are by far the most decisive evidence of what they would have done, they are by no means final.

*See also Peter Pan Fabrics, Inc. v Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960); *Federal Deposit Insurance Corp. v Tremaine,* 133 F.2d 827, 830 (2d Cir.1943).

And in *In re Spong,* 661 F.2d 6 (2nd Cir. 1981), the Second Circuit concluded that it would be exalting form over substance to construe a statute according to its literal meaning. 661 F.2d at 11.

Whether, in the instant case, Congress will formally clarify that it had not intended a blanket prohibition against conversion is uncertain. What is certain is "that a statute should not be applied strictly in accord with its literal meaning where to do so would pervert its manifest purpose." *Adamo,* 619 F.2d at 222. As stated in the Conference Report, the purpose of Chapter 12 is "to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land." H.R.Rep. No. 99–958, 99th Cong., 2nd Sess., at 48 (1986), U.S.Code Cong & Admin.News 1986, p. 5249. Here, literal enforcement of the effective date prescribed by § 302(c) of the enacting legislation would require the Court to disregard Congress' professed purpose.

Still, there is another, more practical, reason for permitting the conversion of pre-Act cases to Chapter 12. If, as here, a farmer is unable to propose an acceptable plan of reorganization under Chapter 11, his bankruptcy case will languish. Eventually, his creditors will seek a dismissal of the case so that they may pursue their State remedies. To permit a case to stagnate hopelessly in Chapter 11 would constitute an abuse of process. Accordingly, the Bankruptcy Court would be compelled to grant an involuntary dismissal. Upon the granting of an involuntary dismissal, however, the debtor would be free to refile in Chapter 12.[2] By permitting conversion in

---

**2.** Section 349(a) of the Code reads in its entirety:

> (a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) of this title.

Section 109(f) of the Code prevents an individual from filing in bankruptcy if he was a debtor under Title 11 during the previous 180 days and,

> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title. 11 U.S.C. § 109(f).

If a case is involuntarily dismissed, other than for failure to appear or contempt of court, a debtor may refile. 11 U.S.C. § 109(f)(1). Likewise, a debtor may refile if his case is voluntarily dismissed provided that the dismissal did not follow a request by a creditor for relief from the

the first instance, not only will Congressional intent be furthered, but much ado about nothing in the Bankruptcy Court will be avoided.

In view of the foregoing, it is determined that Congress intended to permit the conversion of cases filed in Chapter 11 to Chapter 12, even though they were filed prior to the effective date of the Act.

Since there have been no findings made on the factual circumstances surrounding this proposed conversion, a hearing will be scheduled to ascertain whether Mr. Mason meets the parameters set out in 11 U.S.C. § 1112(d). But as to the legal issues raised by this motion, they are settled by this decision and it is so ordered.

§ 362 stay. 11 U.S.C. § 109(f)(2). *Cf. Central Trust Co. v Geiger,* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 242 (1982), *holding* that the debtor could not voluntarily dismiss its case filed under Chapter XI of the 1898 Act to facilitate refiling under Chapter 11 of the 1978 Code. The Court concluded that the debtor should not be allowed to unilaterally accomplish by indirection that which was directly prohibited, since

the conversion of old Chapter XI cases to new Chapter 11 was forbidden by the enacting legislation of the 1978 Code. In this case, if the creditor's motion is granted, the debtor's bankruptcy petition will be dismissed involuntarily. Accordingly, neither the proscriptions of § 109(f) nor the holding in *Geiger* would preclude the debtor from immediately refiling his case in Chapter 12.