### In re Robert N. MASON d/b/a Cerro Indio Farms, Debtor.

### Bankruptcy No. 86–21110.

United States Bankruptcy Court, W.D. New York.

March 18, 1987.

Bernard L. LeViner, Ontario, N.Y., for debtor.

Newman, Kehoe, Wunder & Bartlett by Richard C. Wunder, Lyons, N.Y., for Federal Land Bank.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtor has made application to convert this case from Chapter 11 to Chapter 12. The trial of the issues has been in two parts. The legality of converting a pre-November 1986 Chapter 11 case to Chapter 12

was discussed in a previous opinion by this Court. *In re Robert Mason*, 70 B.R. 753 (Bkrtcy.W.D.N.Y.1987).

In that case, it was concluded that the Court could convert a Chapter 11 case to Chapter 12 if the debtor met the test of 11 U.S.C. § 1112(d). That section sets out three prerequisites to conversion. First, the debtor must request the conversion. 11 U.S.C. § 1112(d)(1). Next, the debtor may not have already received a discharge in the pending Chapter 11 case. 11 U.S.C. § 1112(d)(2). Finally, the conversion to Chapter 12 must be equitable. 11 U.S.C. § 1112(d)(3).

A hearing was held on March 3, 1987 to determine whether the conversion of this case met the predicates of 11 U.S.C. § 1112(d). At the hearing, it was determined that the debtor had requested the conversion and had not been discharged under 11 U.S.C. § 1141(d). Therefore, the only question remaining is whether conversion in this case is equitable.

■ The debtor has indicated that he filed in Chapter 11 on August 22, 1986 to prevent the mortgage foreclosure of his farm. Now, the debtor claims that because of his debt structure, he cannot propose a feasible Chapter 11 plan. He contends, however, that he can propose a feasible Chapter 12 plan and reasons that it would be equitable for the Court to convert his case to Chapter 12 therefor.

The debtor is the owner of a 400 acre farm. The farm operation involves the raising of heifers for sale to dairy farmers. Mr. Mason also raises his own corn and hay for feed, selling the excess as fodder. The farm and its assets are encumbered as follows.

There is a fully secured first mortgage against the real property of the farm. The agreed amount of the first mortgage loan is $224,726. Mr. Mason claims that his farm is worth $265,800. However, no evidence was offered to substantiate that val-

ue. The only appraisal received in evidence as to the farm's value was submitted by the first mortgagee. That testimony valued the farm at $330,000 and it is this figure that the Court accepts as accurate. Accordingly, the value of the property exceeds the amount of the first mortgage lien by $105,283. There is a partially secured second mortgage against the real property. The second mortgage is secured to the extent of $105,283 and unsecured to the extent of $160,517. The debtor owns a herd of cattle. There was no showing of any security in the cattle herd, valued at $34,300. The debtor has some storage bins worth $6,800 which are secured in the amount of $6,000. The debtor has equipment valued at $69,850 which is secured by a first lien in the amount of $47,150 and a junior lien in the amount of $22,700. In total, there are $406,650 worth of secured claims against the debtor. There are also priority claims for taxes on the land in the amount of $4,682.78.

The debtor submitted income and expense statements for the years 1985, 1986 and an estimated income and expense statement for 1987. The 1985 statement showed net farm income of $33,024. The 1986 statement showed net farm income of $30,168. The debtor, who lives on the farm with a 22 year old son, showed family living expenses for 1985 of $14,624 and for 1986 of $16,782. The farm income and expense statements for 1985 and 1986 disclosed that mortgage payments had not been made during those years. The 1987 projections show total farm income of $147,225 and total expenses of $144,649, including mortgage payments of $18,000 and living expenses of approximately $16,300.

If converted to Chapter 12, the debtor proposed to pay his creditors $18,000 per year for 20 years [1] or a total of $360,000. Of that amount, $291,950 would pay off secured indebtedness, $4,682.78 would pay priority tax claims, $35,000 would be paid

---

1. Under 11 U.S.C. § 1222(c), a Chapter 12 plan may not be of a duration greater than five years. However, under 11 U.S.C. § 1222(b)(9), a Chapter 12 plan may provide for payment of allowed secured claims "over a period exceeding the period permitted under section 1222(c)."

to the trustee and $28,000 would be paid to the unsecured creditors. In effect, the unsecured creditors would be paid 19% of their claims. By reducing the amount set aside for the debtor's living expenses, it is possible that $25,000 a year could be paid under the plan. However, even though such austerity were practiced the amount committed to the plan would not satisfy the minimum requirements of Chapter 12.

The debtor has failed to realize that there is approximately $406,650 of secured principal indebtedness against the farm assets, not the $291,000 he imagines. Under 11 U.S.C. § 1225(a)(5)(B), if a secured creditor will not accept the plan, and it appears that there are those who will not, he must be allowed to retain his lien and must be paid interest to the extent of his security. As a result, there would be added to the indebtedness in this case a minimum of $182,000 in interest to be paid over the life of the plan. Under § 1225(b)(1)(A), unsecured creditors objecting to the plan, would have to be paid a minimum of $34,300 (the value of unencumbered assets whose proceeds would be available for immediate distribution upon liquidation in Chapter 7) before full payments to secured creditors could be made. This delay in making full payments to secured creditors would result in the accrual of additional interest. If payments were made through the Chapter 12 trustee, the trustee would be entitled to $57,500 over the 20 year life of the plan. In all, funding of a Chapter 12 plan would require over $32,000 per year. Since the debtor is not currently making, and has not projected to make, enough money to satisfy obligations of this magnitude, a Chapter 12 plan could not be confirmed.

Considering the debtor's financial data as set forth above, he cannot succeed in having a Chapter 12 plan confirmed. Accordingly, it would be inequitable for the Court to permit the conversion of this Chapter 11 case to Chapter 12 and it is so ordered.