**In re Robert N. MASON, Debtor.**

**Bankruptcy No. 90–21413.**

United States Bankruptcy Court,
W.D. New York.

May 20, 1990.

John A. Belluscio, Rochester, N.Y., for debtor.

Andrew J. Weidman, Rochester, N.Y., for Farm Credit.

Christopher Taffe, Asst. U.S. Atty., Rochester, N.Y., for Farmer's Home Admin.

George M. Reiber, Rochester, N.Y., Trustee.

---

MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The valuation hearing in this case is to determine the value of Robert N. Mason's farm to be used in the confirmation of his Chapter 12 Plan. The Court has been informed by Mr. Belluscio, attorney for the Debtor, that if the valuation is more than the Debtor's expert witness, Mr. Schnorr, has testified to, namely $265,800, a Chapter 12 Plan would be impossible of confirmation.

It should be noted that in 1986, a Chapter 11 petition was filed by Mr. Mason. He later moved to convert to a Chapter 12 which was not permitted because of his inability to get a Chapter 12 Plan confirmed.[1] The value of the property at that time was found to exceed that which Mr. Schnorr advocates as the value of the property now.

At the trial of this matter, two other appraisers testified as to the value of the property. Mr. Schnorr set the value at $265,800; Mr. Logan valued the five parcels of the farm at $504,535. Logan's appraisal of the home farm was $323,500. The third appraiser, Mr. Kozlowski, testified that he only appraised the home farm for $325,000. Mason's property, in addition to the 265 acres that comprise the home farm, includes an additional 150 acres or roughly 420 acres for the whole farm.

Analyzing the testimony of the three appraisers, it is clear that Mr. Schnorr's approach was disjointed and difficult to follow. For instance, at Page 10 of the transcript, he testified that good farm land in the neighborhood of the Mason farm was valued somewhere between $600 to $800 an acre and in some case as high as $900. He said 70% of the Mason farm was good farm land but he valued it at $450 to $500 an acre. When he talked about his comparables, he said he had not looked at all of them. At Page 16, Line 22 of the transcript, Schnorr said that he had viewed the property with a developer whom he sells property to and he seemed impressed by

---

**1.** *In re Mason,* 70 B.R. 753; *In re Mason,* 70 B.R. 757.

the disparaging remarks of the developer. When Schnorr was asked on cross-examination if he knew that the Mason farm was assessed at $597,000, he said the full value assessment was overstated and if Mr. Mason had appealed the assessment, he might have gotten it reduced. Mr. Mason had not. Some four years ago when he appraised the farm during the previous Chapter 11, he appraised it at the same price, although he admitted the average price of farm land had gone up 5% in the last four years.

By simple mathematics, if you take his figure of 70% of the land being prime farm land, his testimony of the price of prime farm land and his quoted price for poor land together with his valuation of the buildings, one comes out with a value of $381,000 for the Mason farm.

Analyzing the other appraisals, Mr. Logan's appraisal of the five parcels compromising the entire farm at $504,535 was done professionally, understandably and intelligently. It was backed by data supporting the appraisal, unlike Schnorr.[2] His valuation of the home farm was within a few thousand dollars of Mr. Kozlowski's. Mr. Kozlowski, who only appraised the home farm, appraised it at $325,000, while Logan appraised the home farm at $323,500.

The full assessed value of the five parcels compromising the Mason farm was $597,000 which is generally less than the selling price because the assessment was done some time ago. Therefore, the $504,-535 appraisal value testified to by Mr. Logan is the value of the Mason farm and it is so ordered.

---

**2.** Mr. Schnorr did not seem to be prepared to back his appraisal with facts and data.